**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 22, 2021**

# In the Court of Appeals of Georgia

A21A0932. ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY v. NAY.

A21A0933. NAY v. ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY.

MCFADDEN, Presiding Judge.

Laura Nay was allegedly injured in a motor vehicle collision with a drunk driver. She and her husband settled with that other driver for the full amount of coverage available under his liability insurance policy. At issue before us today is the question of the liability of her own insurer, Allstate Property and Casualty Insurance Company, for uninsured motorist ("UM") coverage.

Georgia law requires insurers to offer two types of UM coverage: excess coverage (sometime called "added-on" coverage) or traditional coverage. Where the injury exceeds a tortfeasor's coverage, excess UM coverage is not reduced by the

amount recovered from the tortfeasor. But traditional UM coverage is reduced by the amount of the tortfeasor's liability insurance.

Nay had opted for traditional coverage. Her UM coverage and the tortfeasor's liability coverage are in the same amount, $100,000. Undertaking to avoid reduction of her UM coverage to zero, she and the tortfeasor allocated 99 percent of her settlement to punitive damages. In the main appeal by Allstate, we hold that undertaking to be ineffective. So we reverse the trial court's summary judgment rulings which had found her UM coverage not to be reduced.

In Nay's cross-appeal, we find that the trial court did not abuse its discretion in allowing Allstate to correct a misnomer in its answer. We also find that the challenge to the denial of Nay's motion to strike the answer because of the misnomer is without merit in light of the correction of the misnomer. So we affirm the trial court's rulings in the cross-appeal.

1. *Facts and procedural posture.*

Nay filed a complaint against Christopher Neikirk for alleged damages arising out of a motor vehicle collision. Pursuant to OCGA § 33-7-11 (d), Nay served a copy of the complaint upon her UM carrier, Allstate Property and Casualty Insurance Company, which filed an answer. Nay subsequently entered into a settlement by

2

which Neikirk's insurer, Mercury Insurance Company, paid Nay the $100,000 per person liability limit provided by Neikirk's Mercury policy, and Nay executed a limited release of claims against Neikirk and Mercury pursuant to OCGA § 33-24-41.1. The limited release included a statement that the $100,000 payment was allocated as $1,000 in compensatory damages to Nay and her husband and $99,000 in punitive damages to Nay.

Allstate and Nay then filed opposing motions for summary judgment on her claim for UM benefits under the Allstate policy. Nay also filed a motion to strike Allstate's answer and other pleadings on the basis that the pleadings had been filed under the incorrect name of Allstate Insurance Company. In response, Allstate filed a motion to correct a misnomer by replacing the incorrect company name in its pleadings with the correct name of Allstate Property and Casualty Insurance Company. The trial court granted Allstate's motion to correct the misnomer and denied Nay's motion to strike. After a hearing on the opposing motions for summary judgment on the UM claim, the trial court entered an order denying Allstate's motion and granting Nay's motion.

In Case No. A21A0932, Allstate appeals from the trial court's summary judgment order. And in Case No. A21A0933, Nay cross-appeals, challenging the trial

3

court's order granting Allstate's motion to correct a misnomer and denying her motion to strike Allstate's pleadings.

*Case No. A21A0932*

2. *UM Coverage.*

Allstate claims that the undisputed facts show that Nay is not entitled to recover UM benefits under her Allstate policy and therefore the trial court erred in denying summary judgment to Allstate and in granting summary judgment to Nay. We agree.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*St. Paul Fire & Marine Ins. Co. v. Hughes*, 321 Ga. App. 738, 739 (742 SE2d 762) (2013) (citation omitted).

So viewed, the evidence shows that under Nay's Allstate policy, she could have choosen either of two types of UM coverage. She could have selected "traditional" UM coverage, or she could have selected excess (or "added-on") UM coverage. She selected the traditional UM coverage option, with a liability limit of $100,000 per

4

person. She expressly rejected the excess (or added-on) UM coverage that would have allowed such coverage to be added on to a tortfeasor's at-fault liability limits. And as recounted above, she settled her claim against Neikirk for payment of the $100,000 per person liability limit provided by his Mercury insurance policy.

"Georgia's UM statute, OCGA § 33-7-11[,] requires insurers to provide UM coverage in automobile insurance policies unless the insured rejects the coverage in writing." *Cline v. Allstate Prop. & Cas. Ins.*, 354 Ga. App. 415, 416 (841 SE2d 63) (2020).

> Under the current law, insurers are required to offer two types of UM coverage. The first type is "added on" or excess UM coverage, which provides that the applicable limits of liability are available to cover any damages an insured suffers which exceed the tortfeasor's policy limits. See OCGA § 33-7-11 (b) (1) (D) (ii) (I). The second type of available UM coverage is the traditional "reduced by" coverage, under which the UM limits of liability are reduced by any amount that the insured received from the tortfeasor's insurer. See OCGA § 33-7-11 (b) (1) (D) (ii) (II). Insureds who elect the "reduced by" coverage generally pay a lower premium than that charged for excess or added on UM coverage.

*Allstate Fire & Cas. Ins. Co. v. Rothman*, 332 Ga. App. 670, 672 (774 SE2d 735) (2015). Accord *Donovan v. State Farm Mut. Auto. Ins. Co.*, 329 Ga. App. 609, 611 (765 SE2d 755) (2014) (the two types of available UM coverage set forth in OCGA

§ 33-7-11 (b) (1) (D) (ii) are an excess or added-on policy and a traditional difference-in-limits policy).

Here, it is undisputed that Nay rejected the option of excess or added-on UM coverage with Allstate, and she instead selected the option of a traditional difference-in-limits policy which provided UM coverage only for the difference between the available liability insurance under Neikirk's Mercury policy and the limit of Nay's Allstate UM insurance. Because Nay has already recovered the full $100,000 liability limit available under Neikirk's Mercury policy, there is no difference between that amount and the $100,000 limit of UM coverage under her Allstate policy. So there is no UM coverage available to Nay.

Nevertheless, Nay argues that she is entitled to UM coverage under her Allstate policy because she allocated $99,000 of her $100,000 recovery to punitive damages in the limited release she executed on behalf of Neikirk and Mercury. Indeed, our Supreme Court has held that such an allocation is unobjectionable since "nothing in OCGA § 33-24-41.1[, the statute governing limited releases,] precludes a statement in the release that a portion of the payment be allocated to punitive damages." *Carter v. Progressive Mountain Ins.*, 295 Ga. 487, 490 (761 SE2d 261) (2014).

6

But it follows, per force, from the holding in *Carter* that neither is such an allocation effective to accomplish Nay's objective here. Such an allocation does not prevent the reduction of traditional UM coverage by the amount paid out under a tortfeasor's liability coverage.

At issue in *Carter* was whether such an allocation resulted in forfeiture of UM coverage. The *Carter* court held that it did not. It did not because inclusion in a release of such an allocation to punitive damages does not shift payment of punitive damages from the at-fault driver's liability carrier to the injured party's UM carrier and so does not contravene the purpose of UM coverage. "[T]he statutory scheme effectively prevents such a shifting." Id. at 490. As the Court explained:

> Under OCGA § 33-24-41.1 (d) (2), the amount paid under a limited release shall be admissible as provided by law as evidence of the offset against the liability of an uninsured motorist carrier. And, by the plain language of the statute, it is "the amount paid" that is admissible, not merely the amount attributed to compensatory damages[, as opposed to punitive damages]. Further, preclusion of any such shifting of punitive damages to the UM carrier is also effected by OCGA § 33-7-11. . . . [I]f the insured selects [traditional UM] coverage under OCGA § 33-7-11 (b) (1) (D) (ii) (II), [as Nay did in this case,] coverage will be limited to the difference between the *available* liability coverages and the limits of the uninsured motorist coverages provided under the insured's motor vehicle insurance policies. Accordingly, . . . the plain language of the statutory scheme achieves the goal of forbidding the shifting of punitive damages [to the insured's UM carrier.]

7

*Carter*, supra at 490-494 (761 SE2d 261) (2014) (punctuation and footnote omitted; emphasis in original).

So the mere fact that Nay's limited release included a statement allocating a portion of her $100,000 recovery to punitive damages did not then shift the payment of those punitive damages to Allstate as her UM carrier. Rather, "it is uncontroverted that the [$100,000] paid represented the limits of [Neikirk's Mercury] policy." *Carter*, supra at 491. And as discussed above, Nay's UM coverage is limited to the difference between the available $100,000 liability coverage under Neikirk's Mercury policy and the $100,000 limit of the UM insurance under Nay's Allstate policy. "Allstate . . . is entitled to set off against its [$100,000 UM] policy limits the $100,000 [that Nay] received from [Neikirk's] insurer." *Allstate Fire & Cas. Ins. Co. v. Rothman*, supra at 674. Because such a set-off leaves no available UM coverage, the trial court erred in denying Allstate's motion for summary judgment and in granting Nay's motion for summary judgment.

*Case No. A21A0933*

3. *Motion to correct a misnomer.*

Nay contends that the trial court erred in granting Allstate's motion to correct a misnomer in its pleadings. We disagree.

8

OCGA § 9-10-132 provides: "All misnomers, whether in the Christian name or surname, made in writs, pleadings, or other civil judicial proceedings, shall, on motion, be amended and corrected instanter without working unnecessary delay to the party making the same." The term "Christian name," as used in this statute, includes the name given to a corporation.

*Mathis v. BellSouth Telecommunications*, 301 Ga. App. 881, 883 n. 6 (690 SE2d 210) (2010) (citation, punctuation, and emphasis omitted). "We review the trial court's grant or denial of a motion to correct a misnomer for abuse of discretion." *National Office Partners v. Stanley*, 293 Ga. App. 332, 333 (667 SE2d 122) (2008).

In this case, we find no abuse of discretion by the trial court in simply allowing Allstate to correct the misnomer of its own name in its own pleadings after having been properly served in its capacity as Nay's UM carrier and having acknowledged such service in its answer. See *Foskey v. Vidalia City School*, 258 Ga. App. 298, 300 (a) (574 SE2d 367) (2002) ("where there has been actual service on the correct defendant but the defendant has been denominated by the wrong name in the pleadings, even if there exists another by such name, correction by amendment of this misnomer may be done"). Moreover, Nay has shown no harm, so "the correction of [the] misnomer . . . is not an abuse of discretion." Id.

4. *Motion to strike.*

9

Nay's claim of error concerning the trial court's denial of her motion to strike Allstate's answer is premised on the misnomer in the answer. Given our holding above that the trial court did not abuse its discretion in allowing correction of the misnomer in the answer, this claim of error is without merit and provides no basis for reversal of the judgment below.

*Judgment affirmed in Case No. A21A0933 and judgment reversed in Case No. A21A0932.  Rickman, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*